The opinion of the Court was delivered by
Tilghman C. J.
This is an action of trover for a quantity of coffee, imported in the ship Margaret from Batavia, arid consigned to J. S. Cox, president of the insurance *67 Company of Pennsylvania. A verdict was taken for the plaintiffs, by consent, subject to the opinion of the whether the defendants were entitled, under all the circumstances of the case, either at law or in equity, to a credit, for a judgment obtained by them against Passmore Birckhead, on three promissory notes drawn by them, and held by the defendants. The case is circumstanced as follows : On the 11th of July, 1817, Passmore Birckhead borrowed of the. defendants 5000 dollars on respondentia, on a voyage to Batavia and, back to Philadelphia. The ship performed her voyage in safety, and arrived at Philadelphia, in July, 1818, with a cargo of coffee, consigned to James S. Cox, president of the Insurance Company of Pennsylvania, the defendants. On the 29th of January, 1818, Birckhead, without the knowledge of his partner Passmore, drew an order on the defendants, to pay the proceeds of the shipment in the Margaret, to Kintzing,• Son, Coxe, deducting the debt due to the defendants on respondentia, and the premium of insurance on the said shipment. On the 2d of February, 1818, the partnership of Passmore í¿? Birckhead was dissolved ; and Passmore was authorised to close the business of the house. About the 18th of May, 1818, Passmore (acting for the Company) entered into a negociation with James S. Cox (acting for the defendants,) when it was verbally agreed between them, that the coffee should be delivered to Passmore, he paying the respondentia debt and interest, amounting to 5900 dollars, and also ten shillings in the pound on three notes drawn by Passmore Birckhead, and held by the defendants, which, at that rate, would amount to 484 dollars 57 cents, making an aggregate of 6384 dollars 57 cents. On the 19th of May, 1818, Passmore (for Passmore £? Birckhead) assigned to Thomas' Spar hawk all the interest of that house in the coffee which .was in the possession of the defendants. On the same day, Passmore tendered to James S. Cox the respondentia debt and interest, and also ten shillings in the pound on the three notes before mentioned; but Cox refused to receive it or to deliver the coffee, because the directors of the Insurance Company refused to ratify the yerbal agreement made by their president. On the 25th of May, 1818, Sparhawk, the son-in-law of Passmore, tendered to James S.' Cox the respondentia debt and interest, but not the *68 shillings in the pound on the notes j but the money was refused. Some time after this, the defendants sold the coffee, by virtue of a power in the respondentia contract. The defendants brought suit against Passmore Birckhead in Court, to July Term, 1818, on the three promissory. notes, amounting to 960 dollars 91 cents. This action was gukmjtte(j to arbitration, and Passmore insisted, before the arbitrators, on the ■ agreement to take ten shillings in the pound on these notes, and examined Sparhawk as a witness to prove the tender made by him, in pursuance of the agreement. The Insurance Company demanded the full amount of the notes, but the arbitrators decided against them, and made an award for no more than 503 dollars 95 cents, from which award the Insurance Company made no appeal. Spar-hawk, in his evidence before the arbitrators, made no mention of the assignment of the coffee to him ; nor does it appear, that, at that time, the Insurance Company had received any notice of that assignment, except it may be implied from the tender of the respondentia debt, made by Sparhawk, on the 25th of May, 1818. When the present action was commenced, it was marked for the use of Passmore, but after-wards, (about the 16th of January, 1819) a docket entry was made, that it was for the use of Sparhawk. It does not appear, that notice of this entry was given to the defendants’ counsel.. Passmore compromised the claim of Kintzing, Son, Coxe, by a payment of 500 dollars ; and he complains of damage sustained in consequence of the premature sale of the coffee, made by the defendants ; that article having afterwards risen in price.
Sparhawk, who may now be considered as the substantial plaintiff in this suit, denies that the defendants have any equity in their pretension to set off the amount of their judgment, because that pretension is founded on an agreement, which they refused to perform on their part, and always resisted, till an award was made against them. It is certain that the defendants have no legal set off; they must stand therefore on the equity of their case. But this equity does not arise solely out of the agreement, but, in part, on the conduct of Sparhawk. If the action stood now for the use of-Passmore, as it was originally brought, it cannot be doubted that the defendants would have an equitable set off *69 against him ; for, although the defendants had refused to carry the agreement into effect, yet as Passmore set it up before the arbitrators, and succeeded in his plea, it could never be endured, that he should be permitted, first, to obtain trie fruits of the agreement in one action, and, after-wards, disaffirm the same agreement in another. The defendants denied the agreement, but Passmore compelled them to perform it, by striking off ten shillings in the pound from the notes. I mean tljat he compelled them, so far as concerned the notes. As.to the delivery of the coffee, they could not be compelled, because it was sold. But that is immaterial, as the present action will give redress for the non-delivery of the coffee. Now, if the defendants’ equity be good against Passmore, why should it not be good against Sparhawk, who claimed under him l Because, say the plaintiffs’ counsel, Sparhawk is not to be affected by any thing which passed between Passmore and the defendants, subsequent to the assignment to him. And I should agree with them, if explicit notice of that assignment .had been given to the defendants. But the circumstances of the case do not warrant the conclusion of notice having been given. Sparhawk relies on the tender made by him, which, he says, is tantamount to notice. But I do not think so. He was the son-in-law of Passmore, (by marriage with his daughter) and had been in company with him, whea he (Passmore) made the tender on the 19th of May. The defendants might well have supposed therefore, that the second tender was on account of Passmore. It is somewhat extraordinary, that this suit, at the commencement, was marked for the use of Passmore. The plaintiffs’ counsel say, that this was not so intended, but done accidentally. It is possible that it may be so. But how are we to account for Spar hawk’’ s silence as to this material fact of the assignment to him, before the arbitrators, when he appeared as Passmore’s witness ? It cannot be supposed, that those arbitrators would have deducted ten shillings in the pound from Passmore Birckheud's notes, if they had known that Sparhawk, who claimed the coffee under Passmore Birckhead, was to receive the value of the coffee from the Insurance Company, in another action, without any allowance for the notes. It cannot be doubted, that Sparhaxvk had notice of the agree *70 ment between Passmore and the defendants, because he went hjm make the tender, under that agreement. It was incumbent on him, therefore, when he Was giving his testimony before tne arbitrators, to inform them that ad the inPassmore & Birckhead had been transferred to him, and that he was prosecuting an action, in which he expected * ^ i to recover from the defendants the value of the coffee, without any deduction for the notes. This, I say, was incumbent on him; and having failed to do it, he must abide by the consequences. That was the time to declare that he was the owner of the coffee, and that he stood upon different ground from Passmore & Birckhead. But not having distinguished his case from the-rs, at that time, he cannot do it now. His conduct has injured the defendants, and given them an equity against him, which they would not have had, if he had disclosed his true situation. As to the compromise, by which 500 dollars were paid to Kintzing, Son, £5* Coxe, the defendants had nothing to do it, nor can their equity be affected by it. It was res inter alios. When Pass-more agreed with the defendants for the delivery of the coffee, he knew of the order in favour of Kintzing, Son, £s? Coxe, and took upon himself to answer it. As to those parties, the defendants were stakeholders, for they received no consideration for that order. But the fact is, that Passmore affirmed it to be of no validity, because it was improperly drawn by his partner Birckhead, and the impropriety, as he said, was well known to Birckhead?s father-in-law Mr. Kintzing. Neither Passmore, therefore, nor Sparhawk, who stands in his place, has any equity against the defendants, arising out of that order.
I am of opinion then, upon the whole, that the defendants have a right to set off against Sparhawk the amount of their judgment against Passmore £s? Birckhead, with the interest and costs thereof.